**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: December 23 2015**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 14-34156 |
| | ) | |
| Xunlight Corporation f/k/a MWOE, Solar, Inc., | ) ) | Chapter 7 |
| | ) | JUDGE MARY ANN WHIPPLE |
| Debtor(s) | ) | |

### MEMORANDUM OF DECISION AND ORDER

Chapter 7 Trustee Douglas Dymarkowski ("Trustee") filed an application to employ Centrus Group as his financial advisor. Creditor ILAND Green Technologies ("ILAND Green") objects to the proposed terms of engagement.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. A trustee's employment of professionals and the terms and conditions of their employment is a matter concerning administration of the estate, which is a core proceeding

that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(A).

The necessity and proposed terms of the Trustee's employment of Centrus Group arise in light of the framework of the case and estate administration to date. After ILAND Greens's initial objection, and concerns of the court expressed at a hearing, the Trustee and Centrus Group submitted a new engagement letter with revised terms of employment. [Doc. # 109]. ILAND Green narrowed its objection in response, but still contests the proposed contingent fee compensation arrangement and the engagement termination provision. [Doc. # 116].

## BACKGROUND

Debtor is a Delaware corporation that was in the business of manufacturing flexible solar cells on leased premises located in Toledo, Ohio. It ceased its manufacturing and business operations several months before it commenced this Chapter 7 case on November 14, 2014.

Debtor's tangible scheduled assets included machinery and equipment, much of it highly specialized for its technology based business, finished solar cell inventory, unfinished inventory and raw materials. Debtor's Schedule B identified six patents as property of the estate, and listed only one claim of unknown value against a third party. Schedule B also disclosed a sub-license to a "Xunlight Asia." Debtor scheduled many of its assets as being of unknown value, but ascribed $1,885,150 to its valued personal property, with most of that value arising from encumbered deposits and finished solar cell inventory. It became clear during the Trustee's administration of the estate that the schedules omitted certain personal property on site at Debtor's leased premises, [Doc. # 87, ¶ 10, p. 3 and Ex. A-1], while assets thought to be there could not be found, [*see* Doc. # 104, pp. 10, 19/24].

Debtor lists Schedule D creditors holding secured claims of $25,642,878.11. Debtor's secured creditors include a number of public entities–the Ohio Air Quality Development Authority, the Ohio Department of Development, the Ohio Development Services Agency, the Toledo Lucas County Port Authority, and the University of Toledo—owed millions of dollars.

ILAND Green is scheduled at addresses in New York and Switzerland as a secured creditor owed $1,449,466. It filed a claim for $1,446, 998.00, [Claim No. 49-1], signed by CEO Daniele Oppizzi, who is also listed individually as a secured creditor, [Claim No. 47-1]. According to ILAND Green, its loans were made in the 10 months leading up to Debtor's cessation of business and bankruptcy filing. [Doc. # 90, p. 1/9]. ILAND Green's CEO and creditor Oppizzi also appears

on Debtor's Statement of Financial Affairs listed as an insider who received a payment of $17,517.00 on June 16, 2014. [Doc. # 1, SOFA, question 3b, p. 61/86].

Debtor's largest scheduled secured creditor is Emerald Cleantech Fund II LP of Guernsey, Channel Islands, owed $11,431,995. The Director who signed Debtor's petition is also from Guernsey. [Doc. ## 1, pp. 3, 67/86; 3]. At one point in these proceedings, Debtor's lawyer was also representing Emerald Cleantech Fund II LP. [*See* Doc. # 38, (Objection filed by Debtor's lawyer on behalf of Emerald Cleantech Fund II LLP to Trustee's motion to sell assets)].

Debtor lists Schedule E priority unsecured debt of $1,563.71 on account of employees' unreimbursed business expenses and Schedule F general unsecured debt of $2,828,646.83 held by suppliers of goods and services, including several law firms and, again, public entities, the University of Toledo and the Toledo Public Schools.

At this point the Trustee has completed administration of Debtor's known patents and tangible assets through a combination of relief from stay to Emerald Cleantech Fund II, LP, sale of certain assets to the landlord for $50,000 (along with a compromise of its administrative claim for rent) and abandonment. [Doc. ## 79, 104 and 112]. Given administrative expenses of the Trustee and his counsel to date, there are minimal liquid assets in the estate with which to pay professionals or fund litigation, complex or otherwise.

But estate administration is not complete. The Trustee has determined through his administrative activities so far and preliminary investigation, with the assistance of his counsel, that there are potential causes of action against third parties that might yield recoveries for unsecured creditors. Potential claims against third parties fall roughly into two categories: (1) causes of action that belonged to Debtor as property of the estate under § 541(a), 11 U.S.C. § 541(a), even though, with one exception, no such claims are disclosed on the schedules, and (2) avoidance actions under Chapter 5 of the Bankruptcy Code and breach of contract actions.

## THE APPLICATION

The Trustee proposes to hire Centrus Group as his financial advisor to investigate and assist in bringing claims against third parties. [Doc. # 86]. The activities that Centrus Group will undertake include analysis of business records (many of which have not yet been located, [Doc. # 117, ¶ 6]), financial reports and data, investigation into the business and corporate affairs of the Debtor and what brought it to liquidation, pre-petition payments, identification of assets, asset transfers and

disposition, the capital and debt structure of the business, the roles and actions of insiders, and analysis of claims against the estate if appropriate. Centrus Group Principal Robert Cohen will manage the engagement. Cohen is qualified by his education (although not functioning precisely as a lawyer, he has a law degree in addition to business degrees) and work experience, including involvement in other state and federal court matters involving financially distressed entities, to undertake the project. The Trustee's filings show that Centrus Group and Cohen are disinterested and do not hold any interest adverse to the estate.

The Trustee proposes to hire Centrus Group on a contingent fee basis. Initially, the proposal set forth a fee of 35% of the gross proceeds received by the estate in resolution of any of a specified group of causes of action brought by Centrus Group up to 45 days before any trial, after which the fee percentage increased to 40%. [Doc. # 86, Ex. 86-3]. Centrus Group will also be reimbursed for its reasonable out of pocket expenses. Payment of compensation and reimbursement of expenses would be subject to further order of the court after application, notice and an opportunity for hearing. The original engagement letter also exculpated Centrus Group for all but gross negligence or willful misconduct. It provided for termination of the engagement "at any time" by either party, provided that Centrus Group would still be entitled to its fees under the engagement letter.

ILAND Green initially objected to the contingent fee proposal, to the exculpation clause and to the termination provision to the extent that Centrus Group would still get paid if it quit or got fired by the Trustee. [Doc. # 90]. As to the fee, ILAND Green argued that employing Centrus Group on the specified contingency terms would result in excessive compensation and leave no financial room for engagement by the Trustee of qualified counsel to actually pursue causes of action in court or otherwise, which Centrus Group is not qualified or being engaged to undertake notwithstanding that Cohen has a law degree. The court shared this concern.

After the hearing, the Trustee filed his revised proposed engagement letter with Centrus Group. [Doc. # 109]. The revised engagement letter sets forth the proposed terms of engagement now before the court for review.

As to compensation, the Trustee still proposes employment of Centrus Group on a contingent fee basis. But the contingent fee has been revised to a two tier fee structure. For certain claims the court will describe (very generally, the point being that there needs to be an investigation to determine what if anything is there) as insider, breach of fiduciary duty and diversion of corporate

-4-

opportunity claims ("Category 1 claims"), the proposed contingency fee is 20% of the gross proceeds recovered. [*Id.*, p.5, Ex. A, ## 1-7,12]. The revised engagement letter specifies that Centrus Group will work with legal counsel Randy Hart to pursue any such claims. In that regard, the Trustee has also filed a separate application to employ Hart as his special counsel. [Doc. # 114]. The Hart application, to which no objection has been interposed, proposes engagement to pursue the same set of claims at a contingency fee of 20% of the gross proceeds recovered, plus his reasonable out of pocket expenses.

The second tier of the revised Centrus Group contingent fee arrangement provides for payment of 15% of the gross proceeds of claims the court will describe (again, very generally) as Chapter 5 and breach of contract recoveries. [Doc. # 109, p.5, Ex. A, ## 8-10, 11]. For these claims, Centrus Group will work with the firm of Diller and Rice, already retained by the Trustee and approved by the court as his counsel on an hourly fee basis.

The new engagement letter also changes the proposed exculpation clause. The new exculpation provision is considerably narrower than the original, specifying that Centrus Group will not be liable for any loss or damage except "such as is a direct result of Centrus's negligence, gross negligence, willful misconduct, breach of contract, breach of fiduciary duty, malpractice or other similar culpable conduct." [Doc. # 109, pp. 3-4/8].

Lastly, the new engagement letter changes the procedure for compensation of Centrus Group if the agreement is terminated for cause. The new proposal specifies that if the agreement is terminated for cause, any fees and expenses due to Centrus Group will be held by the Trustee pending court determination of "the amount of damages caused to the estate by the Centrus Group," which shall be an offset to the compensation amount. [*Id.*, p. 4/8].

Along with the revised engagement letter, the Trustee filed an affidavit of Cohen in further support of the engagement. [Doc. #117]. Cohen's Affidavit highlights as a result of his preliminary (uncompensated) efforts areas of suspicion and potential claims justifying further investigation and the need for the employment and expertise of Centrus Group for the benefit of the estate. It provoked an immediate reaction from ILAND Green in the form of a Motion to Strike, [Doc. # 120], and a subpoena, on the theory that it needed to set the record straight pronto on its putatively impugned corporate virtue. The court has by separate orders, [Doc. ## 125, 126], denied ILAND Green's Motion to Strike and granted the Trustee's Motion to Quash the subpoena, [Doc. # 122].

ILAND Green continues to object to the retention of Centrus Group. [Doc. # 113]. While characterized as a "limited" objection, it attacks the heart of the revised terms of engagement. First, ILAND Green continues to characterize the revised compensation structure as excessive, primarily but not exclusively because Centrus Group will not itself litigate any claims on behalf of the estate. Second, ILAND Green objects to the terms of compensation to Centrus Group if the engagement is terminated by either party.

No other creditor or party in interest has objected to the employment of Centrus Group under the Trustee's proposed revised terms of engagement.

## LAW AND ANALYSIS

With court approval, a trustee may "employ...a professional person...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent basis." 11 U.S.C. § 328(a). In deciding whether the proposed terms of the professional's employment are reasonable, "the court must consider whether the terms are fair to the professional, the debtor [trustee], and the creditors who must bear the expense." *In re LTV Steel, Co., Inc.*, Case No. 01-01116, 2001 U.S. Dist. LEXIS 25338, at *4 (N.D. Ohio Nov. 14, 2001). The bankruptcy court must be persuaded that the terms and conditions are in the best interest of the estate. *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991 (quoting *In re C&P Auto Transp., Inc.*, 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988)). The issue is whether the particular terms are reasonable under given circumstances, and such a determination can only be made on a case by case basis. *In re Metricom*, 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002).

**Contingent Fee Agreement**

The court finds that the proposed revised two tier contingent fee compensation structure for Centrus Group is reasonable under the all of the circumstances of this case.

As an initial matter, Section 328 expressly authorizes employment of professionals on a contingent fee basis. The need for contingent fee employment is critical in this case. Simply put, the estate lacks the resources to employ professionals to investigate and pursue any viable Category 1 claims on any other basis. Such claims are legally and factually complex. The suspicious tangle of insiders, large public investment, foreign entities and transactions, specialized technology business and assets, inaccurate and incomplete schedules and missing corporate and financial records revealed by estate administration to date emphasizes the need for sophisticated factual investigation

-6-

on a contingent fee basis. Likewise these circumstances emphasize the need for a professional like Cohen who brings a blend of corporate, distressed business, finance and legal expertise, willing to try and untangle the insolvency mess and render objective, informed advice about claims to the Trustee. Answering the complicated questions in this case where did all the money go and why will not have any chance of success unless qualified professionals like Cohen and Centrus Group can and will work for a contingent fee.

ILAND Green still objects to the percentage amount of the contingent fee the Trustee proposes to pay Centrus Group as being excessive. The court finds that the proposed revised two-tier continent fee structure effectively addresses the concern that Centrus Group's fee percentage is excessive, and that the original fee structure left no financial room for proper employment directly by the Trustee, not by Centrus Group, of counsel tasked with actually litigating any claims identified.

The new contingent fee structure limits Centrus Croup's compensation to 20% of recoveries on Category 1 claims and 15% of recoveries on more straightforward Chapter 5 and breach of contract claims. That such percentage fee amounts are not so great as to prevent engagement of qualified counsel to litigate identified Category 1 claims is shown by the Trustee's separate application to employ Randy Hart as Trustee's special counsel for that purpose. [Doc. # 114]. Hart's proposed contingent fee percentage is also 20%, for a total contingent fee of 40% of any Category 1 recoveries. Hart's background and expertise in complex commercial litigation qualifies him for the job of litigating any Category 1 claims, while he alone may not have the expertise and resources to undertake the necessary predicate factual investigation. Nobody has objected to Hart's employment as special counsel. The court agrees with the Trustee that the backgrounds and proposed terms of engagement of the two sets of professionals together present a useful synergy best positioned to create benefit to the estate and the unsecured creditors in the investigation and pursuit of complex commercial claims. *See In re Age Ref., Inc.*, 447 B.R. 786 (Bankr. W.D. Tex. 2011)(two law firms hired as special counsel). Overall, a 40% contingent fee recovery is not unusual or unreasonable in the context of complex commercial litigation with an unknown and uncertain but certainly risky chance of success and recovery for the estate. *See In re Merry-Go- Enters., Inc.*, 244 B.R. 327, 311-32 (Bankr. D. Md. 2000)(court enforced 40% contingent fee approved under § 328 in complex commercial litigation, for fee recovery of $71,200,000); *Smith v. Lounsbury (In*

*re Amberjack Interests, Inc.)*, 326 B.R. 379, 385 (Bankr. S.D. Tex. 2005)(special counsel's approved fee was 40% of all assets recovered). And, obviously, if there is no recovery, there is no fee. The revised percentage fee amounts are fair to all involved, as individually and collectively they are not so great as to preclude a meaningful potential recovery to unsecured creditors or so small as to result in the employment of unqualified professionals likely to render desultory service to the estate.

ILAND Green objects to any fee payment based on a percentage recovery from causes of action without requiring Centrus Group to independently show that it provided value and benefit in achieving success with respect to any particular cause of action. Presumably that would be done by requiring Centrus Group to keep track of its time on a claim by claim basis. The court finds three flaws in this argument.

First, ILAND Green essentially attacks the propriety of a contingent fee engagement in the first place. It postulates that Centrus Group should bear all of the risk of a factual investigation that comes up dry at the end of any one or more of the many roads that need to be taken. The benefit of the contingent fee is precisely that it encourages Centrus Group to do its job thoroughly and follow leads regardless of whether any particular avenue of investigation ultimately pans out for the estate. The risk is instead spread across any actual recoveries by the Trustee, which is fair to the engaged professional and fair to the estate because it spreads the risk and reward around in a way that presently makes sense.

Second, given the roads Cohen has already traversed as shown by his Affidavit, [Doc. # 117], it is unworkable except with the benefit of 20/20 hindsight given the nature of Centrus Group's services to attach any particular minute or hour of time spent, document, witness or bit of information to any particular cause of action to the exclusion of others that may not ultimately achieve a recovery. *Cf.* 11 U.S.C. § 330(a)(3)(C). An aggressive, wide reaching factual investigation is to be encouraged, even if some trails prove unfruitful. The court finds that the Trustee's revised proposed compensation methodology is both necessary to the Trustee's administration of this Chapter 7 case and reasonably designed to produce a benefit to the estate. In making this argument, ILAND Green confuses employment the terms of which are pre-approved under § 328(a) with employment based on compensation determined under § 330, a topic addressed

by the court in detail below.[1]

Third, practically speaking, at this point there are no claims or causes of action developed. There may never be. If there is no contingent fee arrangement in place to support a full fledged factual investigation, there most certainly will not be, which may or may not be ILAND Green's objective as the Trustee suggests. The court finds it reasonable under the circumstances of this case for any successful claims to fund the factual investigation Centrus Group is being hired to perform without any certainty of being paid at all.

Likewise, the court finds the 15% contingent fee proposed for Centrus Group on Chapter 5 recoveries to be reasonable, along with the use of already employed "general" counsel on an hourly basis to litigate any such claims. The predicate facts to Chapter 5 and breach of contract claims are likely to be uncovered in the work to be performed by Centrus Group. It would be difficult and duplicative to isolate investigation of those claims from Centrus Group's overall scope of work. Analysis and advice as to Trustee pursuit of Chapter 5 and breach of contract claims portends as generally less complex than with respect to the Category 1 claims. Hence, the second, lower tier of contingent fee recovery makes sense. Again, no recovery means no fee.

The greater risk in pursuit of any Chapter 5 claims will be borne by hourly rate counsel, and in ensuring the proper division of labor between the contingency fee factual investigation and the hourly rate lawyers. By analogy, similar concerns arise in parsing what are properly trustee services compensated at a flat rate and what are properly counsel services compensated at an hourly rate. If the court ultimately disagrees with the division of labor, in other words hourly rate counsel charging for "financial advisor" services, the hourly professionals will bear the fee risk. *In re Garcia*, 335 B.R. 717, 725 (9th Cir. B.A.P. 2005); *In re Butterbaugh*, 135 B.R. 507, 509-10 (Bankr. N.D. Ohio 1991). That is not, however, a basis for disapproving a 15% contingent fee for Centrus Group to do the spadework for Chapter 5 and breach of contract claims. It will be up to the Trustee and the two sets of professionals to manage the engagement properly. *See Age Ref., Inc.*, 447 B.R. at 800-01. The court will defer to the reasonableness of the Trustee's apparent judgment that any Chapter 5 claims can generally be more economically litigated, if necessary, for the benefit of the estate on

---

[1] And as discussed by the court, the terms of the revised engagement letter promote this confusion to some extent.

-9-

an hourly fee basis once the factual investigation is completed on a contingent fee basis.

**Compensation Upon Termination of Engagement**

The court finds, however, that the provision of the engagement letter governing compensation in the event of termination is not reasonable under the circumstances.

The agreement termination provision states as follows:

> This agreement may be terminated at any time by written notice from the Client to Centrus or vice versa, provided that, notwithstanding such termination, Centrus will be entitled to any fees and expenses due up to the time of termination under the provisions of this agreement letter and the Client shall remain liable for the payment of such fees in accordance with the terms of this engagement letter.

[Doc. # 109, p. 4/8]. There are two possible extremes at the boundaries of termination of Centrus Group's services. At the one end, Centrus Group quits after having done little work for the estate, but is still potentially entitled to be compensated in full for recoveries achieved later largely by others. That is what ILAND Green is worried about, reasonably so. At the other end, Centrus Group is fired by the Trustee after having done extensive work for the estate, but is left high and dry without compensation. That is what Centrus Group is worried about, reasonably so.

This concern raises the issue addressed by the United States Court of Appeals for the Sixth Circuit in *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915 (6th Cir. 2004). Specifically, the issue is whether this court will have "pre-approved" compensation of Centrus Group under a contingent fee, 11 U.S.C. § 328(a), or whether Centrus Group is otherwise subject to approval of its compensation after the fact under § 330(a). Section 327 of the Bankruptcy Code authorizes the Trustee, with the court's approval, to employ professionals "to represent or assist the trustee in carrying out the trustee's duties" under the Bankruptcy Code. 11 U.S.C. § 327(a). As already discussed, § 328 permits a trustee, again with the court's approval, to employ a professional under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a); *see also* 3 Collier on Bankruptcy P 328.01 (16th ed. 2009) ("Bankruptcy Code section 328 . . . sets forth certain limitations on the compensation allowable to professional persons employed under sections 327 and 1103 of the Code."). Absent "pre-approval" under § 328, the court may award "reasonable compensation" under § 330 for "actual, necessary services" rendered by professionals employed

-10-

pursuant to § 327 "based on the nature, the extent, and the value of such services." 11 U.S.C. § 330(a). In sum, "'[s]ection 328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so.'" *Airspect*, 385 F.3d at 920 (quoting *In re Tex. Secs., Inc.*, 218 F.3d 443, 445 (5th Cir. 2000)).

In determining whether a bankruptcy court has pre-approved a fee arrangement under § 328(a), the Sixth Circuit directed in *Airspect* that the bankruptcy court must look at "the totality of the circumstances, looking at both the application and the bankruptcy court's order," including "whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328." *Id.* at 922. If the court "pre-approves" a professional's compensation pursuant to § 328, it ultimately may approve compensation different from that allowed only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time," 11 U.S.C. § 328(a), an exception that is very narrowly construed.

In *Airspect*, the debtor retained counsel to pursue a claim against the City of Akron. It applied to the bankruptcy court for approval of counsel's employment, requesting a $7,000 retainer and stating that the parties had reached an agreement for attorney's fees, other than expenses, "to be paid on a contingency basis and are subject to approval of this court." The contingent fee percentage ranged from 33% to 50% depending on the manner and timing of resolution of the claim. The bankruptcy court issued its order authorizing counsel's employment, stating specifically that "Airspect is authorized to pay the sum of $ 7,000 of corporate funds as partial retainer for expenses" and that counsel must "submit [an] application for fees to this Court for approval." After the claim was resolved for $575,000, counsel filed an application seeking payment of $189,750 per the contingent fee agreement with Debtor. Debtor's principal objected to this fee amount, and the bankruptcy court ultimately approved payment of attorney's fees calculated on an hourly basis of only $37,050. It denied counsel's payment under the contingent fee agreement

After two trips to the Sixth Circuit Bankruptcy Appellate Panel, the case reached the Sixth Circuit Court of Appeals. On its first trip, the BAP reversed, holding that the bankruptcy court had "pre- approved " the terms of counsel's employment under § 328(a) and was thus required to honor the contingent fee agreement unless "the terms and conditions prove[d] to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and

-11-

conditions." On remand, the bankruptcy court found that it had improvidently approved the contingent fee agreement and was therefore entitled to review counsel's fee request for reasonableness under § 330(a). On its second trip, the BAP again reversed the bankruptcy court, this time on the basis that the improvidently granted exception did not apply under the circumstances.

The Sixth Circuit disagreed with the BAP, holding that the bankruptcy court had not "pre-approved" counsel's contingent fee employment under § 328(a). As a result, counsel's compensation was subject to a reasonableness analysis after the fact on an hourly basis under § 330(a), resulting in the lesser fee award of $37,050. Specifically, the Sixth Circuit held that:

> "[W]hether a court "pre-approves" a fee arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order. Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328."

*Airspect*, 385 F.3d at 922.

*Airspect* is relevant here because the Trustee counters ILAND Green's argument by pointing to other provisions of the engagement letter that he thinks adequately protect the estate's interest in the event Centrus Group quits. The agreement includes the following provision:

> All fees and expenses herein shall be (1) subject to all applicable Bankruptcy Code provisions governing the retention and compensation of professionals and (2) shall be subject to final review and approval by the court.

[Doc. # 109, p. 3/8]. Another provision addresses what happens to fees if the court decides the agreement should be terminated for cause:

> If a determination is made by the Court that this Agreement should be terminated for cause, any fees and expenses due to the Centrus Group shall be held by the Trustee pending a determination by the Court as to the amount of damages caused to the estate by the Centrus Group, and that, upon such a determination being made, any fees and expenses otherwise due and owing to the Centrus Group shall be offset by the amount of said damages.

[*Id.* p.4/8]. The latter provision seems to contemplate only the circumstances of termination of the agreement by the Trustee determined to be "for cause."

-12-

In response to ILAND Green's concern that Centrus Group will terminate the Agreement without cause to do so and yet still be entitled to its contingent fee compensation even if somebody else does all the work, the Trustee points to the above provision for final review and approval by the court and argues that the estate is protected by the provision of § 328(a) allowing the court to award different compensation if an event occurs that was not capable of being anticipated. The court disagrees that it can generally rely on this provision to award Centrus Group other than its contingent fee if it quits. First, the Sixth Circuit (and other courts) narrowly interpret this provision. *In re Asarco, L.L.C.*, 702 F.3d 250, 257-58 (5th Cir. 2012)(listing cases finding that the improvidently granted standard is a high hurdle to get over). Second, while the exact circumstances of any termination of the agreement by Centrus Group are not foreseeable, that it might do so certainly is as evidenced by the agreement and the instant discussion.

That in turn raises *Airspect*: whether the contingent fee compensation of Centrus Group is being "pre-approved" by this court, in which case the parties should reasonably expect to be bound by it, or whether it is not pre-approved and Centrus Group's fees are still subject to a final reasonableness analysis under § 330, as in *Airspect*. The question is how to reconcile the engagement termination provision with the provision stating that "all fees and expenses shall be subject to final review and approval by the court." That the Trustee's argument that the estate is adequately protected if Centrus Group quits without cause revolves around the narrow "incapable of being anticipated" language of § 328(a), and that there is a separate term that applies if the Trustee terminates Centrus Group's engagement "for cause," tell the court that the parties think the contingent fee is being "pre-approved" by the court if it grants the application on the revised terms of engagement. In reconciling the written terms of the revised engagement letter, the court thus interprets "final review and approval" as "review and approval" of expenses for reimbursement and final review of fees limited to determining whether any event incapable of being anticipated had occurred that made the contingent fee agreement improvident in retrospect. *See Merry-Go-Round Enters.*, 244 B.R. at 336-37. The termination provision references that the Trustee "remains liable for the payment of such fees ['any fees and expenses due up to the time of termination'[2]] under the

---

2

This timing reference is ambiguous. With the contingent fee calculated based on recoveries without any apparent limitation as to their timing, the court is uncertain whether this time provision

14-34156-maw    Doc 130    FILED 12/23/15    ENTERED 12/23/15 16:39:02    Page 13 of 15

provisions of this engagement letter." [Doc. # 109, p. 4/8].

The question raised by Iland Green is whether the estate is thus adequately protected by this term, as Centrus Group certainly and reasonably is. Provisions allowing professionals and trustees to terminate an engagement are not uncommon: the client/trustee needs to retain ultimate authority for the engagement and the professional likewise also often has professional conduct or other limitations on continuing employment under certain circumstances. Where compensation is at an hourly rate, typical final review under § 330 protects the estate. But termination of the engagement and being fair and reasonable to all involved is thornier where, as here, the compensation formula is necessarily on a contingent fee basis that the court contrues as having been pre-approved within the meaning of *Airspect*.

The court agrees with ILAND Green that, as presently drafted, the revised terms of engagement leave the estate unreasonably exposed in the event of termination of the engagement by Centrus Group. The Trustee indicates that "to the extent that the Court believes the language of the Engagement Letter does not implement this purpose, both Centrus Group and the Trustee are amenable to any changes the Court would determine to be just and equitable." [Doc. # 116, p. 7/10]. But the court will not impose terms on the parties to which they have not agreed. *Compare Asarco, L.L.C.*, 702 F.3d at 268("In disputes governed by § 328(a), the contractual agreement is supreme, and we shall enforce the contract as written"), *with In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 398-99 (3d Cir. 2003)(a bankruptcy court need not approve or reject an application as presented but may approve an application with modified terms that the court finds necessary to render the proposed employment reasonable)(citing *Zolfo-Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1997)). They are encouraged, however, to work again on addressing the provisions governing compensation in the event of termination of the engagement by Centrus Group, such as

---

refers only to expenses, or also includes only fees earned under any actual recovery to date. The latter interpretation seems at odds with Centrus Group's best interests and the other provisions of the agreement. Another ambiguity the court finds in the revised terms is that Centrus Group's compensation is the specified percentage of "any cause of action brought by Centrus Group on behalf of the Trustee." As Centrus Group will not itself be litigating any claims, but investigating and developing them, and will not itself be a party to any Category 1 or Chapter 5 claims that are brought, the court has concern about applying this langauge as well, particularly in the context of agreement termination. Thus, the description of claims upon which Centrus Group's compensation will be calculated could use clarification to avoid future disputes.

-14-

by providing for § 330 review in that event, and then resubmit the engagement letter.

Based on the foregoing reasons and authorities, for good cause shown,

**IT IS ORDERED** that ILAND Green's Limited Objection to the Application to Retain Centrus as Financial Advisor for Trustee [Doc. # 113] is **DENIED** in part and **GRANTED** in part as set forth above; and

**IT IS FURTHER ORDERED** that the Trustee is granted leave to file a further revised form of engagement letter in support of his Application to Retain Centrus as Financial Advisor to the Trustee, [Doc. # 86], which submission shall be made on or before **January 8, 2016**, absent which the court will enter an order denying the Application; and

**IT IS FINALLY ORDERED** that any objections to any further revised engagement letter filed by the Trustee must be filed on or before 7 calendar days from the filing of the document by the Trustee.

###

14-34156-maw    Doc 130    FILED 12/23/15    ENTERED 12/23/15 16:39:02    Page 15 of 15